638 So.2d 778 (1994)
Jacqueline Annette NIPPER
v.
VARIETY WHOLESALERS, INC., and Jeff Allen.
1921561.
Supreme Court of Alabama.
January 28, 1994.
Rehearing Denied March 18, 1994.
*779 Jonathan E. Lyerly and Charles Cleveland of Cleveland & Cleveland, Birmingham, for appellant.
Mac B. Greaves of Sadler, Sullivan, Herring & Sharp, P.C., Birmingham, for appellees.
INGRAM, Justice.
This appeal arises from the investigation of Variety Wholesalers, Inc., into complaints involving Jacqueline Annette Nipper, a manager of one of its subsidiary retail stores. Variety's investigating employee, Jeff Allen, questioned Nipper and other employees about the complaints. Soon thereafter, Nipper sued Variety and Allen, alleging the tort of outrage, invasion of privacy, and slander. The trial court entered a summary judgment in favor of Variety and Allen on all claims. Nipper appeals from that judgment.
The dispositive issue is whether Variety's conduct in investigating alleged violations of its corporate disciplinary rules constituted the tort of outrage, invasion of privacy, and slander against Nipper.
A motion for a summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Southern Guar. Ins. Co. v. First Alabama Bank, 540 So.2d 732, 734 (Ala.1989). Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to present evidence creating a genuine issue of material fact. Grider v. Grider, 555 So.2d 104 (Ala.1989). This Court reviews the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, 613 So.2d 359 (Ala.1993).
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala.Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Variety operates a Super 10 discount store in Anniston, Alabama. Nipper was employed as a manager of that store. Variety maintains a network of toll-free telephone "hotlines," the numbers for which are listed in the employee lounges of its stores. The hotlines allow employees to anonymously report to Variety complaints or violations of disciplinary rules. Variety received an anonymous call concerning the Anniston store, during which the caller made four complaints: that Nipper was carrying a gun in the store and was "flashing" it; that Nipper was sometimes under the influence of drugs and was buying them from another employee, S.; that Nipper's boyfriend was in the store on many occasions; and that birthday parties were being held in the store. Variety's disciplinary policy expressly prohibits the following:
"Reporting to work under the influence of alcohol, narcotics, or other intoxicants (other than drugs legally prescribed by a licensed physician for medical purposes only); possession, sale or use of alcoholic beverages, marijuana, or other illegal drugs on Company property.
"....
"Possession of dangerous or illegal weapons on Company property.

*780 "Allowing friends or relatives to visit on Company property at any time, except under emergency circumstances only.
"....
"Unauthorized conducting of personal or group social events on Company property..."
Further, there had been a $30,000 loss of inventory at the Anniston store. Based upon the complaint and loss of inventory, Variety instructed Jeff Allen, a Variety loss prevention manager, to investigate the alleged incidents by interviewing employees at the store.
When Allen arrived at the Anniston store to conduct the interviews, during working hours, Nipper and her boyfriend were in the stockroom with the door closed. Allen proceeded to interview several other employees individually. The interviews were conducted at a table in a back room, with the door open. The interviewees were free to come and go from the room. There was no force or threat used to restrain any employee. Allen told the interviewees that the subject of his interview should be confidential. Allen's interviews with the employees confirmed the allegations made in the hotline complaint, except that no employees accused S. of selling drugs to Nipper. S., one of the employees that Allen interviewed, denied that allegation and stated that Nipper took only a prescription medication. Various employees stated that Nipper carried a gun; that Nipper's boyfriend was at the store every day for one to two hours; that Nipper had attended a birthday party in the stockroom; and that Nipper took a medication during store hours that made her "high."
Allen then conducted an interview with Nipper, which lasted approximately 90 minutes. Only Allen and Nipper were present during the interview. Nipper testified that she voluntarily participated in the interview, that she was under no restraint, and that Allen never stated that she would be fired if she left the interview. Allen took no physical action toward Nipper. However, Nipper alleged that Allen told her that he believed that she was "doing drugs" and that he had had an investigator follow her and S., although there is no evidence to show that an investigator was used in that manner. Nipper further testified that Allen bragged about his investigative technique of pitting one employee against another, that he cursed during the interview, and that he threatened her with dismissal if she talked about the interview with anyone.
In the interview, Nipper admitted taking a prescription medication that made her "sleepy," but denied other drug use. She also admitted having carried a handgun at work and admitted that her boyfriend often visited the store, but she denied attending parties held at the store. Soon after the interview, Nipper was dismissed from her position as manager because of what Variety termed an "inability to perform [her] job." After her dismissal she filed this action, asserting claims of the tort of outrage, invasion of privacy, and slander.
The tort of outrage requires extreme and outrageous conduct by a person who intentionally or recklessly causes severe emotional distress to another. American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1980). The plaintiff must produce sufficient evidence to show that the defendant's conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." American Road Service Co. v. Inmon, 394 So.2d at 365; see Fitch v. Voit, 624 So.2d 542 (Ala.1993).
Variety and Allen's conduct in investigating the hotline allegations by interviewing Nipper and the other employees does not meet the requirements of the tort of outrage. The allegations, along with the fact that the company had lost $30,000 worth of inventory, clearly justified an investigation into the operation of the store and Nipper's conduct at the store. Many of the allegations were in fact true. Further, as stated above, Allen never physically threatened Nipper or the other employees. Allen never forced Nipper to be interviewed. Allen's conduct at worst may be characterized as "mere insults, indignities, threats [or] annoyances," for which this Court has not held one liable under the tort of outrage. McIsaac v. WZEW-FM Corp., 495 So.2d 649, 651 (Ala.1986). The *781 summary judgment was proper as to this claim. See Jackson v. Colonial Baking Co., 507 So.2d 1310 (Ala.1987).
This Court defines the tort of invasion of privacy as the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala.1983).
Nipper did not produce sufficient evidence to sustain a claim of invasion of privacy. Variety had the right to reasonably investigate the complaints made about the store and against Nipper in relation to Nipper's status as manager of the store. It was not unreasonable for Variety to be concerned about complaints such as it received, particularly in light of the $30,000 worth of inventory that had been lost from the store. This alleged intrusion into Nipper's private concerns falls short of that required to constitute the invasion of privacy tort. See Phillips, supra; McIsaac, supra. Therefore, the summary judgment was also proper as to the invasion of privacy claim.
To establish actionable defamation, the plaintiff must show that the defendant published a false and defamatory statement concerning the plaintiff to a third person. Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085 (Ala.1988). Further, this Court has held that communications between employees in the course of transacting the company's business and in the proper scope of the employees' duties do not constitute a publication. Atkins Ford Sales, Inc. v. Royster, 560 So.2d 197 (Ala.1990); Burks v. Pickwick Hotel, 607 So.2d 187 (Ala.1992); Nelson, supra.
Allen was clearly acting within the line and scope of his duties as a Variety loss prevention manager in questioning Nipper's co-employees about her activities at the store. He had been sent there by Variety to investigate the hotline complaints and the inventory loss; he was acting pursuant to a legitimate business purpose. No person other than the employee being interviewed was allowed to hear the conversation between the employee and Allen. The evidence indicates that the communications in question were published only to Nipper's fellow employees and only to the extent reasonably necessary to investigate the hotline complaints and the inventory loss. There was no defamation under these facts. The summary judgment was, thus, also proper as to the defamation claim.
Because Nipper presented no substantial evidence to rebut Variety and Allen's prima facie showing made in support of their summary judgment motion, the summary judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and STEAGALL, JJ., concur.